7489.   CINCINNATI, HAMILTON & DAYTON RAILWAY
COMPANY *v.* QUINCEY & ROGERS.

A common-law action against a connecting carrier for loss or damage to freight, where it is expressly alleged that the injury or damage complained of was caused by the negligence of the defendant carrier, is not prohibited by the terms of the act of Congress of June 29, 1906 (34 Stat. 595, c. 3591, § 7, pars. 11, 12), known as the Carmack amendment to the Hepburn act of February 4, 1887 (24 Stat. 386, c. 104, § 20).

DECIDED JANUARY 23, 1917.

Attachment; from Irwin superior court—Judge George. April 20, 1916.

*Rogers & Rogers,* for plaintiff in error.

*Quincey & Rice, W. M. Rogers, H. E. Oxford,* contra.

JENKINS, J.  Suit was brought by attachment, in the city court of Irwin county, to recover damages from the Cincinnati, Hamilton & Dayton Railway Company for a tort alleged to have been committed by the defendant in the handling of certain shipments of freight which had been entrusted to it as a connecting carrier, whereby the plaintiffs were injured and damaged.  At the trial term of this case, which had been transferred by operation of law to the superior court of Irwin county, the defendant filed a motion to dismiss the action upon the ground "that the declaration shows upon its face that the contract of affreightment was for shipment of interstate commerce, and that said shipment, being an interstate shipment, was controlled by the Carmack amendment to the Hepburn act, which is paramount and exclusive of any State regulation;"  "that, under the Federal statute, embodied in the said Carmack amendment to the Hepburn act, the initial carrier, the Ocilla Southern Railroad Company, alone is liable for any loss, damage, or injury to the shipment, caused by any transportation company over whose line the shipment might have passed, and the remedy of plaintiffs, if any they have, is confined to an action against the said Ocilla Southern Railroad, which road issued the bill of lading."  His honor Judge George, trying the case, overruled the motion to dismiss, and the defendant excepted to this ruling.  The sole question for determination by this court is whether or not, under the Carmack amendment of June 29, 1906, to the Hepburn act of February 4, 1887, a connecting carrier of an interstate shipment of freight may be sued on its common-law liability, where it is expressly alleged that the injury complained of was committed by such defendant.

1. The provisions of the Carmack amendment, pertinent to an understanding of this question, are as follows:  "That any common carrier, railroad, or transportation company, receiving property for transportation from a point in one State to a point in another State, shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the

liability hereby imposed: Provided, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." 34 Stat. 584, 595, c. 3591; U. S. Comp. Stat. 1913, §§ 8563, 8592.

Congress having, by this act, intended to take possession of the subject-matter of interstate shipments, its law is paramount as to all transactions covered by the act; and the decisions of the Supreme Court of the United States construing it are, of course, binding upon the State courts; but, as pointed out by this court in the case of *Atlantic Coast Line Railroad Co.* v. *Thomasville Live Stock Co.,* 13 *Ga. App.* 102 (78 S. E. 1019), the act of Congress, in making the initial carrier liable for damage to goods on any part of the route, created no new remedy, but is merely declaratory of the common law as enforced in this State. The shipper, as there stated, could always have exercised his rights to sue the initial carrier, and he could have always exercised his right to bring his action at common law against the road actually at fault. Thus, the Federal act was designed, primarily to fix the liability under the contract of affreightment, and make the rules governing the same uniform throughout the several States. There appears to have been some misapprehension growing out of the misinterpretations of a ruling of the Supreme Court of the United States in the case of Adams Express Co. v. Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257), in which reference was made to the question here involved, but in the later case of Cincinnati &c. Ry. Co. v. Rankin, decided by that court and reported in 241 U. S. 319 (36 Sup. Ct. 555, 60 L. ed. 1022), Mr. Justice McReynolds, speaking for the court, said: "Properly understood, neither this [referring to the case of Adams Express Co. v. Croninger, supra] nor any other of our opinions holds that this amendment has changed the common-law doctrine heretofore approved by us in respect to a carrier's liability for loss occurring on its own line." In the recent case of Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U. S. 190 (36 Sup. Ct. 541, 60 L. ed. 948), carried from this court to the Supreme Court of the United States, that court, in an opinion rendered by Mr. Justice Hughes, said: "There are only two questions presented here, and these are thus set forth in the brief of the plaintiff in error: 1st. That the

plaintiff's exclusive remedy was against the initial carrier, the Baltimore & Ohio Southwestern Railroad Company, under the Carmack amendment of section 20 of the Hepburn bill. . . . . The first contention is met by repeated decisions of this court. The connecting carrier is not relieved from liability by the Carmack amendment, but the bill of lading required to be issued by the initial carrier upon an interstate shipment governs the entire transportation and thus fixes the obligation of all participating carriers to the extent that the terms of the bill of lading are applicable and valid."

This doctrine thus appears to be well recognized and fully established by the Supreme Court of the United States. It has also been followed by the Supreme Court of this State in the case of *Western & Atlantic Railroad Co.* v. *White Provision Co.,* 142 *Ga.* 246 (82 S. E. 644), in which the following language was used: "It was contended that the suit, if it could be maintained at all, should have been brought against the Nashville, Chattanooga and St. Louis Railway, because, by the amendment of 1906 (U. S. Comp. St. 1911, p. 1307), above referred to, the initial carrier was made liable. But it was expressly provided in that amendment that "nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.' The wrong here complained of was committed by the defendant, not by the initial company, and the plaintiff is not excluded from suing the wrong-doer." The rule here given was distinctly recognized in the case of *Atlantic Coast Line R. Co.* v. *Thomasville Live Stock Co.,* supra, and the interpretation there announced as to the common-law remedy has never been altered by any decision of this court.

Furthermore, there are various decisions, rendered by different State courts of last resort, which plainly follow the rule herein adopted: for example, in the case of Elliott v. Chicago &c. R. Co., 35 S. D. 57 (150 N. W. 777), the following language is used: "The Carmack amendment merely places the shipper in a position where he may be able to recover for injured property and relieve himself, oftentimes, from the task of locating the active tort-feasor. *But if the shipper knows which one among a number of carriers caused the injury, he may sue that one alone."* In Baltimore, C. & A. Ry. Co. *v.* Sperber, 117 Md. 595 (84 Atl. 72), the

court held that the Carmack amendment is intended merely to give a cumulative remedy, and does not prevent the shipper from maintaining an action against the connecting carrier at fault. In the case of Varnille Furniture Co. v. C. & W. C. Ry. Co., 98 S. C. 63 (79 S. E. 700), the following language was used by the court: "The Federal statute does not limit the right or remedy of the holder of the bill of lading, in case of loss or damage, to an action against the initial carrier receiving property for interstate transportation. While it says that that carrier shall be liable, on the principle that succeeding carriers in the route are its agents, it does not say that it alone shall be liable, or that the holder of the bill of lading shall pursue that carrier only. . . To hold that the initial carrier alone is liable to the holder of the bill of lading would, in many cases, cause the very expense and inconvenience which the statute was designed, in part at least, to obviate."

Thus it appears that the rule indicated as laid down by the Supreme Court of the United States and followed by the Supreme Court of this State and by this court is fortified by the rulings of various courts of highest resort in other States.

*Judgment affirmed. Broyles, P. J., and Bloodworth, J., concur.*